United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACY PENNING,

Plaintiff,

v.

FARMERS INSURANCE COMPANY, INC.,

Defendant.

Case No. 26-cv-06124-JSC

**ORDER TO PLAINTIFF TO SHOW CAUSE RE: ARTICLE III STANDING**

Re: Dkt. No. 26

Plaintiff filed this putative class action against Farmers Insurance Company, Inc. ("Defendant" or "Farmers") alleging it installs third-party trackers on individuals' internet browsers when they visit Farmers' website in violation of various California laws. The Court's review of Plaintiff's First Amended Complaint ("FAC") raises concerns regarding Plaintiff's standing and thus subject matter jurisdiction.

**DISCUSSION**

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id*. (citations omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Arizona Dep't of Transp*., 683 F.3d 1177, 1184 (9th Cir. 2012) (cleaned up). Because Article III standing is an issue of subject matter jurisdiction, it can be raised any time, including sua sponte by the court. *City of Los*

*Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009). Indeed, courts "have an independent obligation 'to examine jurisdictional issues such as standing [sua sponte].'" *Wilson v. Lynch,* 835 F.3d 1083, 1090 n.2 (9th Cir. 2016).

To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). In a putative class action, at least one named plaintiff must have Article III standing. *See Healy v. Milliman, Inc*., 164 F.4th 701, 706 (9th Cir. 2026). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing he, as the sole named plaintiff, has standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A "concrete" injury can include "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. In *Popa*, the Ninth Circuit addressed Article III standing in a privacy case similar to this action. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). There, the plaintiff alleged the defendant's session-replay technology captured her information while she browsed for pet supplies on a pet supply website. The Ninth Circuit affirmed the district court's dismissal for lack of Article III standing because the nature of the collected information was not "embarrassing, invasive, or otherwise private." *Id*. at 786-87, 791. The court held the plaintiff had not established "how the tracking of her interactions ... caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. at 791. The court explained further "the kind of harm and not the degree" is relevant for determining whether an alleged injury-in-fact is concrete enough relative "to a specific common-law tort" and that the injury must be one "that has traditionally been actionable in our nation's legal system." *Id*. The common law analysis must be "particularized to the plaintiff's circumstances and benchmarked to a specific tort." *Id.*

The FAC does not plausibly allege how the tracking of Plaintiff's interactions with Farmers' website caused him "to experience any kind of harm that is remotely similar to the

'highly offensive' interferences or disclosures that were actionable at common law." *Id.* Plaintiff alleges he visited Farmers' website on one or more occasions "to obtain information regarding automobile insurance to explore obtaining an insurance quote." (Dkt. No. 26 ¶ 108.) Specifically, on one occasion in May or June 2025 "Plaintiff navigated to the [w]ebsite's quote tool, entered information including his zip code … and completed portions of the quote questionnaire by entering information such as name and birth date in order to receive pricing and coverage information," though he did not ultimately submit a quote request. (*Id.*) These allegations do not support an inference the information collected by Farmers' website is "sufficiently private or sensitive to constitute an intrusion upon seclusion." *Trevor Lutge, v. Timex.com, Inc.*, No. 26-CV-00960-EMC, 2026 WL 2691100, at *4 (N.D. Cal. Sept. 14, 2026). For example, Plaintiff does not allege the collection of information about his personal financial information. *See Ortiz v. Foris Dax, Inc.*, No. 25-CV-08950-EMC, 2026 WL 3002660 (N.D. Cal. Oct. 6, 2026) ("[T]he collection of information about a party's 'own financial information' may be sensitive enough so as to constitute a concrete harm sufficient to establish standing." (citing *Straight v. Edfinancial Servs., LLC*, No. 26-CV-01807-JSC, 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026))). Nor does he allege any specific facts regarding collection of information "involv[ing] either more inherently sensitive information, like medical data, immigration status, or sociopolitical views, or tracking extensive enough to create 'cradle-to-grave' profiles." *Lutge*, 2026 WL 3002660, at *3 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020)).

Moreover, Plaintiff's allegations that he opted out of cookie tracking but Defendant allowed the tracking anyway does not necessarily mean he has suffered a sufficiently concrete injury. In *Ortiz*, for example, the plaintiffs alleged the www.crypto.com website used cookies to track their website activity, and did so even though the plaintiffs had expressly "disabled" cookies, similar to what Plaintiff alleges here. 2026 WL 3002660 at *1-2. The *Ortiz* plaintiffs used the crypto website to research specific cryptocurrencies; so, they alleged the third-party cookies were able to collect information about their "financial interests, financial needs, and investment-related research." *Id.* at *2. Applying *Popa*, the district court held they had not plausibly alleged a concrete injury sufficient to support Article III standing. First, the information allegedly collected

was no more sensitive than that collected in *Popa*. Second, as for the crypto website tracking the plaintiffs after representing it would not do so, the *Ortiz* court explained:

> It is also true that visitors to a site have "a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track." The use of deceit can be a "'plus' factor" elevating otherwise borderline conduct to a "highly offensive" intrusion. However, deceit alone does not convert every instance of routine information collection into a 'highly offensive' invasion. "The key is the sensitivity of the information collected."

*Id.* at *4 (internal citations omitted). Given the lack of sensitivity of the data allegedly collected, the district court dismissed the case for lack of Article III standing. *Id.*

Drawing reasonable inferences from the factual allegations in Plaintiff's favor, the data allegedly tracked here is likely not sufficiently sensitive. The only identified Farmers' website activity is Plaintiff once visiting Farmers' website to obtain information regarding automobile insurance and inputting his zip code and information "such as name and birth date" to receive a quote request, which he did not submit. (Dkt. No. 26 ¶ 108.) So, based on the FAC allegations, and under current Ninth Circuit law, the Court is not satisfied that Defendant's failure to disable cookies as promised means Plaintiff suffered a concrete injury that would support federal court jurisdiction.

**CONCLUSION**

Accordingly, by November 2, 2026, Plaintiff shall show cause in writing as to the Court's subject matter jurisdiction over this action; and, in particular, demonstrate how the FAC plausibly alleges Plaintiff has Article III standing. If Defendant wishes to respond to Plaintiff's submission, it may do so by November 12, 2026. A ruling there is no Article III standing is not a ruling on the merits; rather, it just means the action will be dismissed without prejudice to Plaintiff pursuing his claim in state court where there is no Article III standing requirement. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Defendant's response to the Amended Complaint shall be due 14 days after the Court rules on the Order to Show Cause, assuming the Court finds subject matter jurisdiction. (*See* Dkt. No. 25.)

**IT IS SO ORDERED.**

United States District Court
Northern District of California

Dated: October 19, 2026

JACQUELINE SCOTT CORLEY
United States District Judge